The second case before us this morning is 20-8065. 20-8065 Wyo-Ben Inc. v. Haaland. Ra-Haaland. Counsel, would you make your appearance for appellant, please? Good morning, Your Honors. Robert Marsh on behalf of Appellant Wyo-Ben Inc. Ra-Haaland. Your Honors, may it please the court, the government in this case would have this court apply the statute of limitation to immunize a federal officer's failure to act in accordance with an expressed congressional directive that has been interpreted and applied by a controlling decision of this court. The law, however, does not allow the government to so conveniently avoid expressed congressional directives. For example, the continuing violation doctrine applies where Congress's instructions impose a continuing administrative obligation to act. You know, you both kind of hung your hats on the continuing violation doctrine. And as I look at that doctrine, I'm not sure that's where you want to be. You know, the continuing violation doctrine, if you look at sort of where it developed in the hostile work environment realm, you have discrete acts over a period of time, some in and some without, the statute of limitations that together create one cause of action. I don't think that's what you have here. Uh, there are two aspects of it. One is the aggregation of acts that Judge McHugh, your question addresses. The other is the continuing nature of the obligation that is derivative from Congress's command, as it is in this case, that the secretary of the interior is obliged to make this purely ministerial decision to report to Congress until he has concluded making those decisions. So it is the nature of that continuing obligation that in this circumstance, uh, implicates the continuing obligation doctrine as opposed to the aggregation of acts referred to in other cases like Sierra Club. Well, why isn't this a repeated violation? Well, that is, uh, it certainly is, uh, your honor. Isn't this more like your ADA case? Uh, absolutely. It is, uh, very similar to the Hamer case and Judge Carson's opinion in that case, which triggered repeated violations doctrine based on exactly the same congressional intent of a continuing administrative obligation to act. These two doctrines deliver the functional equivalent, the same result that for so long as the federal official is obliged by Congress to act, that obligation can be violated and an action can be commenced to enforce the obligation. What do you think about, what do you think about this? I, I look at your case and I see that, uh, the department of interior had all these applications and they were going to end up in one of two buckets, so to speak. They were either going to be in the grandfathered bucket or they were going to be in the ungrandfathered bucket, for lack of a better term. And what they did with your case was put it in the ungrandfathered bucket. And so didn't, didn't your limitations period start then? I mean, you can't just, I mean, that's when, that's when the action occurred, when they took it in the bucket, put it in the wrong bucket, so to speak. You can say, well, they reviewed it incorrectly. They, they put it in the wrong bucket. It should have been grandfathered. They didn't review it at all. And it was arbitrary for them to stick it in the non-grandfathered bucket, but that's what they did. Wasn't that act what started this? Uh, the answer to that question, Judge Carson is no. The reason the answer to the question is no is because the actor that placed it in the bucket was the BLM. Specifically the Wyoming state office of the BLM. But prior to that action taking place, the secretary of the interior had expressly revoked the BLM's authority to take that action. That's secretarial order 3163. And shortly thereafter, within a year and a half or so of that order, Congress repeated the express revocation of the BLM's authority to make that to the secretary of the interior. So you're arguing that it's the wrong person acting and somehow that prevents your claim from accruing, which is what I think Judge Carson is getting at is when did your claim accrue? And your position is that my application was complete and ready to before the moratorium went into place, correct? Correct. So your action, your cause of action, requesting action accrued when your application was complete in your view, right? No. Why couldn't you have brought an action then? So. Brought an action saying review my file now. So the cause of action for secretarial fail to act under section 706 of the APA would accrue at one of two points in time, where the secretary had unlawfully withheld action or where the secretary's action has been unreasonably delayed. So it would have literally been impossible to bring an action against the secretary on October 3rd of 1994, as the government has contended for the simple reason that there had been no final action by the secretary that could be reviewed, nor has. You knew they were refusing to act as of the time they noted the moratorium on your file, right? At that time, you certainly knew they weren't going to act on this file. So number one, YOBEN did not know that at the time because there was no notice, but the serial register page did reflect that suspension. And that was a public document. It is a publicly available document, yes. And after that, they indicated a list of grandfathered and you weren't on it. Correct. The decision, though, that decision was reversed by Mount Emmons for misapplying the... For a particular person, claimant. Yes, but based on the legal application of the plain language of Congress's instruction. But you, at some point, you had a fully formed claim that could have been filed. Yes. Okay. And what is the point at which you admit the action accrued? It would have been sometime after February 15th of 2019, when the act of Congress was approved. Even if I were to buy your argument that every time they pass a new appropriations bill, you get a new cause of action. You had a cause of action available on prior statutes before that. You're telling me none of those accrued? You never had an action that could have been brought before 2019? No, there were other rights of action that could have been asserted, but that failure to assert those rights of action under the continuing and repeated violation doctrine... I'm not focused on exceptions to the statute limitations. I'm trying to get to when your cause of action accrued. It may be that it accrued, but the statute, for some reason, didn't run. But it accrued back at the time of the moratorium, didn't it? It did not. And the reason for that is because the law and the facts, which must aggregate to the cause of action, that gives Wyoben an entitlement to relief, did not coalesce so that there was a complete and present cause of action until 2019. Our difference, Judge McHugh, is that there is a singular cause of action or multiple causes of action, as Judge Carson's opinion in the Hamer case explained. Here, there were multiple freestanding independent causes of action, and one of them accrued in 2019, and that is the one that is pled in Wyoben's complaint. Well, that bespeaks the repeating violations theory, and is more consistent with that, because let me see if I understand your position. The position is that, yes, there could have been other causes of action that we could have brought prior to 2019, but that doesn't preclude us from bringing the action that did come into place in 2019. And in 2019, at that point, the Secretary unreasonably did not act on our application. That, Judge Holmes, is absolutely correct. In the words of the Hamer panel, failing to act in the face of an administrative duty to do so axiomatically gives rise to liability. And if the actor then, under affirmative duty to act, keeps failing to act, while the underlying problem remains unremitied, then every day's inaction amounts to a new violation and a new statute of limitations. Okay. And for your purposes, the failure to act came into fruition when the 2019 statute came into play, which is the one that you're bringing this claim relative to, right? That is correct. Okay. Well, I want to go back to the whole question of continuing violations theory. I mean, these are distinct theories, as Hamer points out, and as other cases have pointed out. It seems to me that when I look at your brief in the district court, I don't see a continuing violations argument. I mean, it seems to me you're making a repeated violations argument before the district court. You didn't have a separate section on continuing violations doctrine, and you talked about repeating violations. And so, it's not clear to me that you didn't waive that argument anyway. So, Judge Holmes, the argument regarding continuing violations is raised in sections B and C of Weill-Benz brief opposing and requesting oral argument on respondent's motion to dismiss. In those sections, the continuing violation doctrine is discussed, as it is here, as an outgrowth of congressional intent imposing a continuing obligations act. Do you have a record site for me? Yes. That response brief begins at the appendix volume one at pages 158, and the actual argument shows at pages 174 through 177 and 184 through 86. Thank you. With that, Your Honors, with your permission, I will excuse myself and reserve the rest of my time for rebuttal. Yes. Counsel for the government. May it please the court. My name is John Arbab on behalf of the government defendants. Your Honors, I think that Judges McHugh and Carson are correctly focusing on the way we view this case. The plaintiff's cause of action under section 706.1 of the APA first accrued. The question under the statute of limitations here, 28 U.S.C. 24.01a, is when did the right of action first accrue? And as the colloquy has indicated, I believe that the correct accrual date is one of first accrual is one of two dates, either October 3, 1994, when the application of YBEN was determined to be subject to the moratorium and not entitled to qualification for the exemption or the grandfathering to the moratorium. That would be one accrual date, the earlier of two dates. And the claim was not filed within six years of October 1994. It was filed some 25 years later. The latest accrual date, we believe, would have been June of 1997, June 30th, I believe, 1997, which is the date on which this court's decision in Mount Edmonds issued. And Mount Edmonds is the legal basis for this kind of a failure to act APA claim. And so the claim should have been brought. It first accrued at the time of Mount Edmonds and the suit should have been filed within six years of that date. So sometime no later than June of 2003. And the suit was filed 16 or so years later in 2019. So their argument is that the there was no action by the person that was that the person who needed to act and that person was the secretary. And so at the October date that you referenced, only the BLM had adjudicated their request. And that and in their view, that was not sufficient. And so under the statute, their view is that the secretary needed to act and the secretary didn't act. So 7061 gave them a claim. Why is that wrong? Your Honor, that strikes me as being part of their merits argument. In other words, we have been believed that the secretary himself or herself had to make this decision. And it wasn't that that official did not make the decision. That's part of the merits claim. Well, if their claim is agency action unreasonably withheld, I mean, maybe it is part of their merits argument, but it's also a predicate for their claim for determining the statute of limitations, because they're not saying we're not they're not saying final agency action. They're not saying that. So that's not the trigger for accrual. The trigger for accrual is unreasonably withheld. And so they're saying that's the entity, the secretary is the one who unreasonably withheld it. So why? I mean, this this statute itself, the nature of the claim begs that question, does it not? Your Honor, I believe that if the if the claim is that no BLM made the decision to suspend our application and determined that it did not qualify for an exemption, but the secretary should have made that determination, not BLM, then that is part and parcel of a failure to act claim. The someone at the agency should have acted and did not. And so that would be part of the claim, I would think, that you would. Their claim is that's exactly right. But that means that that means that the accrual would be the failure to act and the failure to act existed up into twenty nineteen. There's been no action that in their mind cognizable action on the claim. And so in twenty nineteen, when the appropriations of statute came into play, boom, here we got another unreasonable failure to act. I mean, under a repeating violations theory, let's assume for the moment that we're operating under that theory and you can contest that as you like. But for the moment, let's assume we're operating under that theory. Why doesn't that these facts? Because as of twenty nineteen, the secretary by the statute is presumed to have had the obligation to act on requests for exemptions from the moratorium and no action was taken. Well, your honor, actually, by by twenty nineteen, the secretary had had redelegated authority to to act on these applications, to make first half first half certificate determinations and and patent determinations. By twenty nineteen, that authority had been redelegated. The landscape was much different from the way matters stood at the time of Mount Emmons or for that matter, at the time of in nineteen ninety four when this application was submitted. But the district court didn't reach in making its determination as to statute of limitations. Any question of delegation did it know that that that the district court did not reach that specific question because the court believed that the claim was time barred as pled. But to answer your honor's question, the by twenty nineteen, the authority had been redelegated from the secretary of the interior back down to the director of BLM. So I mean, one of the and I think that's that explains in part why this is a merits question. Who who exactly had the authority that the who exactly had the obligation to act? The question is is much different from as between nineteen ninety four and twenty nineteen. And as we point out in the brief, even at at the time of Mount Emmons, although Secretary Babbitt had withdrawn the authority of subordinate officials to issue these first half certificates or patents, the same secretarial order three one six three had, as noted in Mount Emmons, had kept the authority of the field, the state BLM state offices to process applications and to collect the paperwork and to assemble the the files to be sent forward for review. So well, why isn't this delegation question then a necessary predicate to making a proper limitations determination? I mean, I mean, what we're talking about is who was the decision maker? If it turns out that the delegated decision maker was the BLM, then it seems to me the limitations answer is an easy one. But if it is not the BLM and it's the secretary, then it becomes a little more complicated. And so why wouldn't it be appropriate to remand to the district court to have a district court address the question of delegation before ruling on the limitations issue? Your Honor, I think that I think that the issues can't be separated out quite that way because the question of who needed to make this determination is part, as we view, as part and parcel of the merits of the 706-1 claim. But in terms of when did that claim accrue and was the complaint timely filed? That is a prior question, I believe. But accrual doesn't answer whether the statute ran. I mean, it could very well have accrued all the way back at the date of the moratorium. But because of the repeated violation doctrine, the statute is continuing because we have repeated and we have a clear statutory duty to act and no action. And I guess whether it's the BLM or the secretary, the petitioner, the claimants here are saying nobody acted and we have a right for action. So under Hammer, wouldn't we have a repeated violation exception to the running of the statute limitations? I don't believe so, Your Honor. We discussed that in the brief at some length. To my mind, I suppose the best way of seeing why that doctrine doesn't apply is because it doesn't reflect a reasonable interpretation of why it is that Congress found it necessary to repeat the moratorium and the exception there to year after year after year. The reason Congress needed to do that was... I think they're separate concepts. I don't even think we need the fact that they kept passing the Appropriations Act. We didn't have that in Hammer. You can have a repeated violation doctrine application without the duty being reaffirmed. You just have a duty and it's I disagree because here the duty only extends for one fiscal year. And that began back in fiscal year 1995. The reason that the 2019 iteration of the Act is being invoked in this complaint is that in all the intervening years, Congress, because this was a rider to an Appropriations Bill, had to keep repeating the moratorium and the exception in every fiscal year. And the reason behind that is that unless the exception, the moratorium and the exception were repeated, then the Secretary would have to stop, in any given fiscal year, would have to stop processing the exempt applications unless the exception were repeated from one year to the next. Would have to stop or start? Start processing. Would have to stop working on applications that had been found exempt, say in the previous fiscal year, but were still in the works that hadn't been decided. No, I'm sorry. The opposite is true as well. The Secretary would have also had to start working on the non-grandfathered bucket too at that point if Congress didn't keep including the rider. Otherwise, they'd be subject to a failure to act claim, right? Yes, Your Honor. I do believe that's correct. Doesn't that create a problem? I mean, let's put Hammer aside. Doesn't that create a problem for you in that we don't have just some theory of trying to find an exception to the limitations period based on a repeated violation doctrine? We have a new statutory act every year. I mean, I think that's your opposing counsel's argument is, hey, I had 24 years worth of these claims. I just chose not to bring any of the others. And what troubles me about your position is that with Congress punting like they've done year after year, YOBIN could be sitting there. We don't know what they're doing, but they could be sitting there saying, oh, this is a temporary moratorium. Next year, there's going to be some money for these. So I'm just going to lay low. And what they have is every year there's a new act basically sticking their claim to the side. I mean, isn't it a problem that there's a new act every year? No, Your Honor. I don't think so. Congress had to act each fiscal year to keep the moratorium in place, and it had to keep passing the same exemptions so that applications that the Secretary had determined met the criteria for an exemption could continue to be processed. But that doesn't mean, for example, in this case, that when the fiscal year 2019 act was passed, the language does not suggest that the Secretary needed to go back and first accrued and were time barred, somehow revived or sprang back to life. So I think that our theory of why the repeated violations doctrine doesn't work fits very well with the statutory structure and the statutory language. Let me ask you this. So is it your position that they could lift the moratorium this upcoming year and that because the plaintiffs are time barred, because they didn't bring their action within six years, that BLM could presumably never act on it and they wouldn't have a claim, even after the moratorium is lifted? No, Your Honor. I think if Congress lifted the moratorium, then Wyobin's application and all of the other ones that were found long ago to have been subject to the moratorium, there would be no more moratorium. And so those applications would come back to life, as it were, and BLM could continue to process them. Well, let me understand that, come back to life, so they wouldn't have to refile again. Is that what you're saying? I don't think so, Your Honor. These applications that have been deemed subject to the moratorium, the paper files are, as I understand it, they're literally in locked file cabinets awaiting the occurs, then BLM will be free to resume processing those applications. But Congress has not seen fit to do that thus far. And in our view, by repeating the exemption, Congress is not changing the statute of limitations or starting a new statute of limitations long before the latest iteration of the moratorium and exemption. Okay, let me make sure I understand one point, then. If you're saying that these applications could come back to life and they would not have to refile, then why wouldn't it be the case that when the statute was re-enacted or reauthorized in 2019, why couldn't Wyobin say then that now there's an obligation in 2019 and my application has not been disposed of, discarded, it still could come back to life now because there's a continuing obligation. So why, because I initially thought I heard you say that this application had been adjudicated, so it's done. In other words, it's gone. And so in 2019, when the secretary or whoever had authority to act, this application is gone, that Wyobin wouldn't have to do something else in 2019. But I heard you now say that the applications would come back to life. Well, if they could come back to life, why wouldn't they come back to life in 2019 under Wyobin's theory vis-a-vis inaction by the secretary? Well, Your Honor, maybe I wasn't as clear as I should have been. But on the merits, our position is that even before the moratorium first came into effect, BLM had determined that these applications were not complete, the paperwork was not complete, and therefore, a first-half certificate should not issue. And so if the case were, if the complaint were found to be timely, then we believe that that issue should be decided by the district court on remand. It wasn't briefed and it wasn't decided because the lower court found that the claim was time barred. Well, that clearly is a merits question, but that's not what I understand as to be called wrong to decide today. And that's, I mean, I can see there's some overlap here, at least that's what the argument suggests. But I guess the point I'm getting at is, as I understand their theory, in 2019, there was a new obligation of the secretary to act. I already have an application in BLM's files. Therefore, I can use that as a basis for unreasonable action. And your argument in contrary to that is succinctly put is what? That the passage of the 2019 Act did not create a new cause of action, as it were, or bring back to life claims that had been, had first accrued and were time barred long before the 2019 Act was enacted. The purpose of the 2019 Act was to continue the moratorium, but also to continue to give the secretary authority to continue to work on applications that had been found to be exempt from the moratorium. And that type of a statutory scheme does not allow for the bringing of failure to act claims that were time barred long before the 2019 statute was enacted. Judge Holmes, would you indulge me for one more question? Absolutely. Counsel, what would your position be on this hypothetical? Say that the secretary wanted to go pull a few claims out of the plaintiff's bucket and review them to determine whether they fit within the grandfathered clause. Would the secretary have that discretion? At the present time? At the present time today, could the secretary say, I'm going to get a few of those out and review them to see if they should have been grandfathered? Your Honor, I think the best answer to that hypothetical is that if any of those applications that you're hypothesizing have already been deemed subject to the moratorium. They have been because that's the bucket they're in. Right. Then I think that the secretary, absent further action from Congress, would have to leave those in the moratorium bucket and would continue to work on processing the other Okay. So, in your view, the secretary is bound by the BLM's decision that an application is not complete or was not complete before the moratorium? I think that if the case were decided on the merits, our position is that this should be addressed by the district court, but that even before the moratorium came down, when the BLM Wyoming State Office had delegated authority to do so, it made a determination that this application was not complete enough to move to the next stage of review for possible issuance of a first half certificate. Any further questions? No, that's it for me. All right. I don't recall how much time you have. Two minutes. Okay. Well, we'll add four to that, Melissa, if you would. And you don't need to use it all, but you have it. Thank you, your honors. To start at the end regarding the question of the secretary's authority to revisit these applications at any time the secretary deems fit, that authority is established by Title 43 of the Code of Federal Regulations at Section 4.5 that establishes not only is the secretary's authority unlimited by the remainder of the BLM's regulations, but that the secretary may assume jurisdiction over any issue the secretary seems fit for the secretary's attention, and that when the secretary does so, the administrative record will be called and a written decision will be issued by the secretary resolving the issue. But ultimately, we still have the same issue, is that the right of action springs from a failure to act in the face of a contrary congressional directive. And whether we refer to that as an operation of the continuing violation doctrine, which, by the way, at page 21 of the respondent's brief, they admit Wyoben relied upon in the district court. Well, they may admit that, but I'm looking back now at page, what is it, 179 of the record, and it says, quote, the unlawful act asserted by Wyoben does not come within the definition of one continuing violation of a single permanent statute. Why is that not a rejection of the continuing violations doctrine? Because number one, we do not have a single permanent statute at issue. So the facts of this case are different. And number two, there are the two applications of continuing violation derivative of a continuing statutory obligation imposed versus the aggregation of conduct that is sometimes referred to as an obligation spring anew with every statutory enactment? Certainly. Otherwise, then how is it a continuing as opposed to repeated statutory obligation? It is actually both. And it is continuing because the duty continues and so can be violated at any point until the action required is taken or Congress removes the obligation to act. I'm sorry, go ahead. Well, if the duty continues and that's, I want to get to this theory. Your theory is premised on the expectation that the moratorium expired each year and then was passed again, right? But you're now arguing that duty continued. And I recognize that typically we do treat it as expired, but not always. And we look at whether the statute has indications of future indication of application. And here, right in the statute, it's talking about obligations over the next five years and reports that have to be filed. I mean, why isn't that an indication that Congress didn't intend for this to expire with each statute? Because, well, number one, each statute did expire, Judge McHugh. You're quite correct in that regard. The five-year obligation of progress and reporting is actually the issuance of patents. It is not toward the ministerial decision that Mount Emmons requires the secretary to make about completeness of the patent application from the applicant's perspective. Well, in your brief, you argue that from its beginning, the legal framework of the moratorium was designed by Congress to continue until Congress could resolve its deadlock regarding elimination of patenting rights, but the political impasse has never ended. I mean, again, that suggests to me, like you're saying, unlike many appropriation bills, this moratorium piece was always intended by Congress to be continuing. Do you disagree with that? I do not disagree that the congressional intent was for a continuing secretarial obligation to act, but the terms of each annual Appropriations Act are also specific in the expiration of that act and its prospective application to the fiscal year that it addressed. Well, if the 2018 Act has expired and there was no 2019 Act, there wouldn't be no continuing obligation to act, right? Well, that's true. If Congress... Well, then how is there a continuing obligation to act that goes beyond the one-year term of the statute? There is not. Well, then if there is not, then how does this fit within a continuing violation theory if there is not a continuing obligation to act beyond the term of the statute? Because there has always been a statute imposing the obligation to act since September 30th of 1994. Well, that may well be, but the point I'm trying to get at is what box does this fit in, if any, and it would seem to me that if it fits into a box, it more likely fits into a repeated violations box than a continuing violations box because you could have at every juncture a failure to act under a new obligation to act, but there was a moment in time, could have been a moment in time where there was no obligation to act. There absolutely could have been, yes. There was not, but there absolutely could have been. Just a few words on Mr. Arbab's reference to the re-delegation of authority to the BLM. I think that's answered by the simple fact that if in fact it took place, there is no such law or any indication in the record in this case that it has, nor is there any indication that either the secretary or the BLM has made any decision whatsoever after whatever might be the hypothetical date of that re-delegation, and of course, neither the government nor Mr. Arbab can ask this court or the district court to make a decision on any basis other than the administrative record that the respondents themselves compiled and does not include the alleged re-delegation. I see, your honors, that my time has expired. Unless there are any other questions, I believe that concludes my arguments. Seeing none, thank you, counsel. Case is submitted.